

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES P. GRAGERT,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration<br><br>    Defendant. | CV 15–118–M–DLC–JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff James P. Gragert brings this action under 42 U.S.C. § 405(g) seeking judicial review of a partially favorable decision by the Commissioner of Social Security on his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq.

I. **Procedural Background**

Gragert applied for benefits in July 2012, alleging disability since April 13, 2012, due to Hodgkins lymphoma, liposarcoma, having had one kidney removed,

asbestosis, coronary artery disease, diabetes, high blood pressure, a goiter and depression. (AR 108). Grager's application was denied initially and on reconsideration. (AR 95-117). After an administrative hearing, the ALJ issued a partially favorable decision finding that Gragert was entitled to a closed period of disability from April 13, 2012 to July 1, 2013, but thereafter demonstrated medical improvement enabling him to perform a limited range of light work. (AR 19-33). Gragert filed a request for review, asserting he remained disabled after July 1, 2013. The Appeals Council denied Gragert's request for review, making the ALJ decision final for purposes of judicial review. (AR 1-6). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Gragert was 47 years old at the time of his alleged onset date, and 49 years old at the time of the ALJ's decision.

## II. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## III. <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work,

the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

In a case where the claimant is found to be disabled at any point in the five step process, the ALJ must determine whether that disability continues through the date of the decision. To find that a claimant's disability does not continue through the date of the decision, the ALJ must establish that the claimant has experienced medical improvement that would allow her to engage in substantial gainful activity.[1] 20 C.F.R. § 404.1594(a); *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). In determining whether medical improvement has occurred, the ALJ follows an additional eight-step process. 20 C.F.R. § 404.1594. Medical improvement is "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "Once a claimant has been found to be disabled,...a presumption of continuing disability arises in [the claimant's] favor and the Commissioner "bears the burden of producing evidence sufficient to rebut the presumption of

---

[1] The medical improvement standard that governs in cases involving the termination of disability benefits also applies to closed period cases. *See e.g. Hinkley v. Colvin*, 2016 WL 3563663 *10 n. 8 (D. Ariz. July 1, 2016).

continuing disability" and establishing medical improvement. *Bellamy v. Sec'y of Health & Human Services*, 775 F.2d 380, 1381 (9th Cir. 1085).

## IV. Discussion

The ALJ first found that Gragert meets the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since his April 13, 2012, alleged onset date. (AR 22). At step two, the ALJ found that Gragert suffered from the following severe impairments: coronary artery disease, status-post LAD stenting x2, Hodgkins lymphoma, well-differentiated liposarcoma of the abdomen, and en bloc right nephrectomy (kidney removal). (AR 22). The ALJ concluded that Gragert did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (AR 23).

The ALJ found that Gragert's statements as to the extent of his symptoms from April 13, 2012, through July 1, 2013 were generally credible. The ALJ further found that during this time period Gragert had the residual functional capacity for a limited range of sedentary work activity with the need for additional breaks and absences due to his cardiac condition, hernia surgery and complications, and surgery and recovery related to liposarcoma and Hodgkins lymphoma. The vocational expert testified that there were no jobs in the national

economy that an individual with such a residual functional capacity could perform, and the ALJ concluded that Gragert was disabled for the closed period from his April 13, 2012, alleged onset date through July 1, 2013. (AR 24-28).

The ALJ found that by April 13, 2012, however, Gragert had experienced significant medical improvement and was capable of performing a limited range of light work without needing additional breaks and absences. (AR 29). In particular, the ALJ found that the complications from Gragert's hernia surgery had resolved and Gragert's liposarcoma and relapsed Hodgkin's lymphoma were in remission. The ALJ further found that Gragert's subjective testimony as to the extent of his pain and limitations after July 1, 2013, was not entirely credible. (AR 30). The ALJ concluded that Gragert was not disabled after July 1, 2013, because there were a significant number of jobs in the national economy that he could perform, including work as a parking lot attendant, small products assembler, or addressing clerk. (AR 33).

Gragert challenges the ALJ's determination that he was not disabled after July 1, 2013. He argues the ALJ (1) did not provide sufficiently specific and legitimate reasons for rejecting the opinion of treating physician Dr. Glenne Gunther; (2) failed to set forth clear and convincing reasons for discounting his testimony as it related to the period after July 1, 2013; (3) erred by not

categorizing his asbestosis as a severe impairment (4) failed to fully and fairly develop the record, and (5) did not give germane reasons for discounting lay witness testimony.

### A.  Medical Opinions

Gragert contends the ALJ erred by not giving more weight to two questionnaires completed by his primary care physician, Dr. Glenne Gunther.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting

-8-

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

Gragert was diagnosed with Hodgkins lymphoma when he was fifteen years old, and suffered a relapse in March 2012, at the age of 47. In March 2013, Gragert underwent hernia surgery, and following complications had a second corrective surgery in May 2013. Dr. Gunther was Gragert's primary care physician during this period, and saw Gragert roughly a dozen times between June 2011 and February 2014. (AR 1095-1102).

In February 2014, Dr. Gunther completed a residual functional capacity questionnaire on which he stated that Gragert had several symptoms related to recurring cardiac problems, an abdominal hernia, depression, and asbestosis. (AR 1076). Dr. Gunther indicated that Gragert's symptoms would constantly interfere with his attention and concentration, and he would be incapable of even low stress jobs. (AR 1077). Dr. Gunther additionally indicated that Gragert could stand for only 30 minutes at a time, sit for 60 minutes at a time, and stand/walk for a total of

less than two hours in an eight hour work day. (AR 1077). Dr. Gunther wrote that Gragert would need a job allowing him to shift positions at will and take up to ten unscheduled ten minute breaks during an eight hour work day. (AR 1078). In March 2014, Dr. Gunther completed a second questionnaire provided by Gragert's counsel after the administrative hearing. Dr. Gunther stated that Gragert had experienced debilitating fatigue since his cancer surgery, chemotherapy, and second incisional hernia surgery. (AR 1107).

The ALJ considered Dr. Gunther's opinions as set forth on the two questionnaires but gave his assessment as to the severity of Gragert's symptoms after July 2013 little weight for a number of reasons. First of all, it is important to note that the ALJ found Gragert was disabled from April 2012 to July 2013 – and that many of Dr. Gunther's medical records are from that time period. In fact, six of Gragert's eleven visits with Dr. Gunther took place during the period that he was considered disabled. The ALJ credited those records in finding Gragert disabled. The question here, however, is whether substantial evidence supports the ALJ's determination that Gragert experience medical improvement after July 1, 2013.

The ALJ reasonably discounted Dr. Gunther's opinion as to the severity of Gragert's symptoms and limitations after July 1, 2013, because it was not

supported by his own treatment records or those of Gragert's other treating doctors. At a recheck on July 23, 2013, Dr. Gunther wrote that Gragert had completely recovered from his hernia, had gained back weight, was doing well in general, and was not having any issues related to his heart condition or lymphoma. (AR 1004-05).

Dr. Gunther apparently saw Gragert three more times after that. In October 2013, Gragert reported intermittent chest pain which Dr. Gunther said did "not sound cardiac in nature at all" and recommended that they "just wait and see what happens." (AR 1007). When Gragert presented for a wellness check in January 2014, he reported doing fairly well in general, had just gotten a German shepherd puppy, and said he was planning to get more exercise with the dog. (AR 1097). Dr. Gunther referred to Gragert's cardiac condition as stable, noted there had been no evidence of any recurrence of his liposarcoma or Hodgkin's lymphoma, and his hernia repair was holding up well. (AR 1097). Dr. Gunther did not plan on seeing Gragert again for a routine visit for one year. (AR 1100).

As the ALJ noted, however, Gragert returned to Dr. Gunther one month later to go through paperwork related to his disability claim. (AR 31, 1095). It was during that visit that Dr. Gunther completed the medical source questionnaire on which he identified several debilitating limitations. As the ALJ also noted,

-11-

there is indication that Dr. Gunther performed any sort of physical examination at that time. The ALJ reasonably discounted Dr. Gunther's opinion as it related to the time period after July 1, 2013, on the ground that it was not supported by his treatment notes from that period. The ALJ found with record support that Dr. Gunther's opinion was "more truly reflective of [Gragert's] functioning prior to July 1, 2013," when he was indeed disabled. (AR 32).

The ALJ also discussed medical records from other treating physicians after July 1, 2013, that were not consistent with Dr. Gunther's opinion. For example, on July 2, 2013, Dr. John Means – the doctor who performed Gragert's hernia surgery – wrote that Gragert was "doing very well and without complaint." (AR 664). Dr. Means "removed all restrictions" and discharged him from his care "with only as needed followup required." (AR 664). And in November 2013, Gragert's oncologist, Dr. Peter Wagner, wrote that Gragert was doing "very well" with no new complaints, and his liposarcoma and Hodgkin's disease remained in remissions with CT scans showing a "complete" response to treatment. (AR 1063).

The ALJ permissibly relied on the treatment records provided by Dr. Gunther, Dr. Wagner, and Dr. Means in finding that Gragert had experienced medical improvement by July 1, 2013. The ALJ in turn provided sufficiently

specific and legitimate reasons for discounting Dr. Gunther's opinion as to the severity of Gragert's limitations after July 2, 2013.

**B.    Credibility**

Gragert argues the ALJ did not provide sufficiently clear and convincing reasons for finding his testimony as to the severity of his symptoms after July 2, 2013, only partially credible.

If the ALJ finds "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). Gragert met his initial burden because he provided evidence that he has underlying impairments that could reasonably be expected to produce some degree of symptoms, and the ALJ did not find that he was malingering.

Gragert testified that he cannot work due to back pain, dizziness and fatigue. (AR 58). He explained that he spends time every day resting and sleeping in a recliner due to pain and fatigue, has fallen down due to dizziness, and has difficulty sitting, standing and lifting due to back pain (AR 50-58).

The ALJ accepted Gragert's testimony as it related to the period before July 1, 2013, but found his testimony as to the extent of his pain and limitations after that date only partially credible based in large part on medical evidence showing that his condition had improved by then. As discussed above, and throughout the ALJ's decision, the medical records reflect that Gragert's hernia had resolved by July 2013 and his liposarcoma and Hodgkin's disease were in complete remission. *See e.g. Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ may discount a claimant's credibility based on evidence of medical improvement).

The ALJ also observed that Gragert reported engaging in activities after July 2013 suggesting he was capable of doing more than he claimed. (AR 30-31). For example, while Gragert complained of disabling fatigue, back pain, and dizziness, the ALJ noted he told Dr. Gunther in October 2013 that he was planning on going hunting and had not had any chest pain on exertion. (AR 30, 1006). The ALJ also cited the fact that Gragert was able to perform activities of daily living and sometimes engage in heavier exertional activities like chopping wood, albeit with some difficulty. (AR 30).

To the extent the ALJ found Gragert's testimony as to his limitations after July 1, 2013, not credible, he provided sufficiently clear and convincing reasons, supported by substantial evidence, for doing so.

C. **Severe Impairments**

Gragert maintains the ALJ erred by not categorizing his asbestosis as a severe impairment.

At step two, the ALJ determines whether a claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520, 416.920. An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520; 416.920. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Gragert is correct that the ALJ did not discuss his asbestosis at step two, and did not include asbestosis as a severe impairment. (AR 22-23). But the ALJ found that several of Gragert's other impairments were severe, including his coronary artery disease, Hodgkin's lymphoma, and liposarcoma. (AR 22, 29). Because the ALJ accepted that Gragert had several severe impairments, he proceeded with the sequential evaluation process and assessed Gragert's residual

functional capacity. When making that residual functional capacity assessment, the ALJ specifically considered and discussed the evidence relating to Gragert's asbestosis.

The ALJ recognized that Gragert was exposed to industrial asbestosis and cited imaging studies showing extensive pleural parenchymal changes consistent with asbestosis in the left hemithorax. (AR 24). He then addressed medical records showing that Gragert's asbestosis was stable during the relevant time frame and did not cause him significant limitations. As the ALJ noted, for example, when Gragert saw pulmonologist Dr. Owen Austrheim in July 2013, he reported having some dyspnea on exertion when walking uphill or climbing stairs, but did not report or note any dyspnea with his usual activities. (AR 25, 959). Dr. Austrheim wrote that Gragert was doing well overall, his oxygen saturation was 98% on room air, and he was taking no medication for breathing. (AR 25, 959). Dr. Austrheim planned to have Gragert return to the clinic in another 12 months for an annual followup. (AR 960).

Because Gragert prevailed at step two, and because the ALJ considered the evidence relating to his asbestosis later in the sequential analysis, any error on the ALJ's part in omitting asbestosis as a severe impairment at step two was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to find an

impairment severe at step two was harmless because the ALJ considered the impairment when assessing the claimant's residual functional capacity); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The ALJ adequately accommodated for Gragert's asbestos by limiting him a range of light work.

### D. Duty to Develop the Record

Gragert argues the ALJ failed to fully and fairly develop the record because he should have ordered additional testing to determine whether Gragert had experienced medical improvement as of July 1, 2013.

An "ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). But the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Furthermore, whether to order a consultative evaluation or additional testing is left to the ALJ's discretion. *See* 20 C.F.R. §§ 404.1519a, 416.919a; *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). The ALJ is not required to order such a consultative

examination unless such an examination is necessary to enable the ALJ to make an informed disability determination. *See* 20 C.F.R. §§ 404.1519a.

The record here was not ambiguous or inadequate. The ALJ discussed the medical records at length in his decision, and pointed to specific evidence showing that Gragert experienced medical improvement as of July 2013 because he had recovered from his hernia surgeries and his liposarcoma, and Hodgkin's disease were in complete remission. The medical and other evidence of record was sufficient for the ALJ to make an informed decision. Because the ALJ had adequate and unambiguous evidence upon which to base his decision, he was not required to further develop by ordering a consultative examination or other unspecified testing.

### E. Lay Testimony

Gragert contends the ALJ did not provide germane reasons for discounting his wife's lay witness testimony.

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must

give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919). Competent lay witness testimony "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nonetheless, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th cir. 2012). "Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina* 674 F.3d at 1114. Moreover, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's]claims.'" *Molina v. Astrue*, 674 F.3d at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Gragert's wife, Cherie, testified on his behalf at the administrative hearing. She described the same problems with pain and fatigue that Gragert described. (AR 78-85). The Commissioner concedes that the ALJ erred by not specifically addressing Cherie's testimony, but argues that error was harmless. The Court agrees. Because Cherie's testimony largely reiterated Gragert's own testimony, which the ALJ properly discredited, the ALJ's error was harmless. *See Molina*, 674 F.3d at 1122 (ALJ's failure to consider lay witness testimony was harmless

where that testimony "did not describe any limitations beyond those" described by the claimant, "which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons).

## V. **Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly, IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED.

DATED this 31st day of August, 2016

_____
Jeremiah C. Lynch
United States Magistrate Judge